## E. H. BECK & COMPANY AND ISAAC RAFFEL

*vs.*

## HANLINE BROTHERS.

*Landlord and tenant*: *nuisances; injuries to third parties; bursting water pipe; duty of plaintiff. Hypothetical question. Evidence: erroneous ruling; when no ground for reversal. Negligence: example of other people; no defence. Prayers: unsupported by evidence; several prayers; one exception only, where ruled on as one act.*

Where injuries result to a third person from the faulty or defective condition of premises demised, or from their condition at the time of the demise, or because they contain a nuisance, even if this only becomes active by the tenants' ordinary use of the premises, the landlord remains liable therefor, notwithstanding the lease. pp. 76-77

Where a landlord is not bound to make repairs that become necessary during the possession of the tenant, yet if he assumes to do so, and neglects to perform the obligation, or if, in performing it, any injury is caused by want of skill or proper selection of his workmen, the landlord is liable therefor. p. 77

The fact that a landlord is liable for injuries resulting from the dangerous or defective condition of the premises, does not relieve a tenant from liability to third parties, for his own negligence in failing to take proper precaution to avoid injuries to them, resulting from the condition of the property in his possession and under his control. p. 77

The reservation by a landlord of a right to enter upon the premises for the purpose of regulating and repairing the water meters and pipes, does not relieve the tenant from the consequences of his negligence in failing to use reasonable care to avoid injury to the property of third parties resulting from a breakage of the water pipes, etc. p. 77

Where a tenant was in possession and control of an entire building, and, through the breakage of water pipes because of their freezing, the building was flooded and the water penetrated the building next door and injured the property of the plaintiff, it was *held,* that it was a question for the jury to say whether, under all the circumstances disclosed by the evidence, the tenant was guilty of negligence in failing to turn the water off and drain the pipe; and in such a case the tenant could not escape liability for his own negligence (if such should be found by the jury) by showing that the landlord had neglected to supply the usual and proper appliance for turning off the water.

p. 78

In such a case the plaintiff had a right to show the condition of the pipe in question and what caused the injury. And evidence offered by the plaintiff to show whether there was a wheel on the valve to turn the water off, or a place for such wheel, was admissible. pp. 78-79

In an action for damages for injury occasioned by a bursted water pipe, it was *held,* that the fact that the pipe could have frozen at some other point than at the point where it did freeze, had no bearing upon the issue, and evidence as to such possibility was irrelevant. p. 79

The fact that a number of other people do not use proper care in turning off their water supply in severe weather does not tend to show that the defendants, in such a case, were not guilty of negligence. pp. 80-81

Where to prove a fact, proper to be considered in a case, improper evidence is admitted, it is no ground for reversal, if the fact is proved independently by proper testimony. p. 79

Hypothetical questions can not assume the existence of facts that have not been proved. p. 80

The failure of other parties to use ordinary care can not relieve defendants from the consequences of their own negligence in a similar case. pp. 80-81

In an action brought for injury to the plaintiff's goods caused by a bursting water pipe, which the defendants had neglected to turn off, it was *held,* that there could be no objection to the prayer of the plaintiff, which failed to deduct from the amount of the plaintiff's loss, "such damage as was caused by a lack of

precaution on the part of the plaintiff to prevent further damage," where there was no evidence in the case that there was any damage due to such failure on the part of the plaintiff. p. 81

Where a number of prayers for instructions to the jury are submitted to the trial court at the same time, the ruling of the Court upon them is a single act, and only one bill of exceptions should be taken.      p. 81

*Decided December 3rd, 1913.*

Appeal from the Baltimore City Court (HARLAN, C. J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Forrest Bramble* and *Julius H. Wyman,* for the appellant.

*Clarence A. Tucker* and *Joseph N. Ulman* (with whom were *Charles H. Knapp* and *Samuel J. Harman* on the brief), for the appellees.

THOMAS, J., delivered the opinion of the Court.

The declaration in this case contains three counts. The first count charges that the plaintiffs occupied the premises in Baltimore City known as 23 and 25 South Howard street; that the defendant, Isaac Raffel, owned the premises immediately adjoining on the north known as 21 South Howard street, which was occupied by the defendant, Eberhard H. Beck, trading as E. H. Beck and Company, as the tenant of the said Raffel; that the defendants, "for their own use and purposes," brought upon their said premises water from the mains in the bed of Howard street by pipes connected with the general water supply system of the City, and that they negligently and carelessly suffered and permitted the water pipes upon their said premises to be and remain in a defective condition, and that by reason of their negligence and carelessness in the premises, on the 9th day of January, 1912, the water escaped and flowed from said pipes in large quantities, and, overflowing the premises of the defendants, "perculated

through the wall" dividing their said premises and the adjoining premises of the plaintiffs and overflowed the plaintiffs' premises "and damaged the plaintiffs' goods." The second count charges that the defendants negligently permitted the pipes on their said premises to freeze and burst with the results stated in the first count, and the third count alleges that the defendants brought said water upon their said premises "for the purposes" stated, and that the pipes on their said premises leaked and burst, and that large quantities of water flowed therefrom upon the premises of the defendants and upon the property of the plaintiffs and injured the plaintiffs' goods. The defendants pleaded that they did not commit the wrong alleged, and the trial of the case in the Baltimore City Court resulted in a verdict and judgment in favor of the plaintiffs against both defendants for five hundred dollars, from which judgment they have appealed.

During the trial the defendants reserved fourteen exceptions to the rulings of the Court on the evidence, and three to the action of the Court on the prayers offered on behalf of both defendants and those presented by each of the defendants separately.

The evidence shows that the defendant, Raffel, was the owner of the property known as 21 South Howard street, and that the same, at the time of the injury complained of, was in the possession of the defendant, Beck, as his tenant. Water was introduced into the property by a pipe connected with the city water supply system and running under the pavement into the defendants' cellar, and was used in operating an elevator located in the front part of the cellar and extending from the cellar to the upper stories of the building. The cellar extended beyond the building line, and there was an area-way in front, which was covered by an open grating. Between the front of the cellar and the open area-way there was a wooden "frame work with glass windows and a door of ordinary sash construction." There was no heat in the cellar, and no provision was made for heating it, and the pipe, the bursting of which caused the damage complained of, and

which was called the stand pipe, was located, according to the testimony of the plaintiffs' and defendants' witnesses, from seven to nine feet from the open area-way. This pipe was about three inches in diameter and five feet high, and was supplied with a valve so that the water could be turned off and the pipe drained. According to the usual proper method of construction, a wheel is attached to the valve and the valve is opened and closed by turning the wheel. Stopcocks are not used in pipes of that size, and in the absence of a wheel the valve could not be turned off except by the use of a monkey wrench or a Stilson wrench. On the morning of the 9th of January, 1912, the employees of the plaintiffs, upon reaching the plaintiffs' property between six and six-thirty o'clock, heard the water running in the defendants' cellar. As soon as the door of the defendants' building was opened the witness, Wiegand, went into the defendants' cellar and turned the water off. The pipe was leaking at the valve and the water was coming out of the pipe with great force. When he went into the defendants' cellar he found that there was no wheel on the valve and he went into the plaintiffs' building and got the wheel off the valve in the plaintiffs' cellar, but finding that it did not fit the valve on the defendants' pipe he returned to the plaintiffs' building and got a Stilson wrench, and turned the water off. Mr. Beck, one of the defendants, states that a police officer came up to his house about six o'clock in the morning and told him that the pipe had burst; that he immediately dressed and ran down to the store, and when he went into the cellar and found out what was wrong, he "ran up to Koethe's, the plumbers, to see whether" he could get him, or get a wrench of some kind to turn the water off, as he did not have one in his building; that Cothe was not there and that he then went up to Cothe's house and found that he was not up; that Kothe's tools were not at his house and someone there gave him a pair of pliers; that when he went back to the store he found that the pliers would not work, and that that while he was trying them one of the plaintiffs' employees got a wrench from the plaintiffs'

building and turned the water off.  He further stated that he knew sometime before the accident that there was no wheel on the valve in the defendants' building, that there was no wheel there when he took possession of the property, and that he had notified Mr. Raffel of that fact.  On the 15th of January, 1912, he wrote counsel for the plaintiff as follows: "Yours of the 13th to hand.  Your clients informed you correctly when they stated that the water pipe was in a defective condition for sometime.  As to any claim for damages would refer you to Mr. Isaac Raffel, the owner of the building, who looks after all repairs.  We had quite a loss ourselves, and are making our claim upon him also, as it was through his negligence that the loss occurred."  On cross-examination he stated that he meant by the term defective, used in his letter, that there was no wheel on the valve, and that Mr. Raffel attended to repairs.  Mr. Raffel's daughter testified that Mr. Beck called her up "over 'phone" on the 8th of January, 1912, and stated that a water pipe had burst in 21 South Howard street; that she told him that Mr. Raffel was out and asked him to send for Mr. Koethe to make the repairs and he said he would; that she also asked him to report in the afternoon if the repairs had been made; that when her father came in she told him of what she had done and between five and five-thirty she called up Mr. Beck and asked him whether the repairs had been made and that he stated that they had and that everything was alright; that she reported this to her father, and that "it met with his approval."  The weather was very cold, and between the fifth and the thirteenth of January the minimum temperature was between zero and fifteen degrees above zero.  On the 8th of January the maximum temperature was thirty-four degrees and the minimum temperature nine degrees above zero, and on the 9th the maximum temperature was thirty degrees and the minimum temperature fifteen degrees above zero.  The injury complained of was due to the freezing of the water in the standpipe which caused the pipe to burst.  The water flowed from the broken pipe into the defendants' cellar and then through

the wall between the defendants' cellar and the plaintiffs' cellar into the plaintiffs' cellar and flooded it to the depth of between ten and fifteen inches, and injured the plaintiffs' goods to the extent, according to the plaintiffs' testimony, of about five hundred and forty-six dollars. The plaintiffs further proved that it was their custom during cold weather, in order to avoid injury from the freezing of the water in their pipes, to leave some heat in their building at night, and to turn the water off and drain the standpipe; that when the temperature is below thirty-two degrees the water in pipes located in cold places is apt to freeze, and that when pipes like the one referred to are located in a cold place the proper and usual precautions against freezing, and injury likely to result therefrom, are to have the pipes covered and to make special provision for turning the water off and draining the pipes. The evidence also shows that the pipe in question was "covered with a felt covering, with canvass on top of the felt;" that no provision was made for turning off the water or draining the pipe, and there is no evidence that either of the defendants made any effort to have the water turned off the evening before the accident. By the lease, under which Mr. Beck occupied the property, and which was dated December 29th, 1908, he rented the first floor of the building for the period of two years, and the entire building for the term of three or five years, as he should elect, from the expiration of the two years term, and therein covenanted to keep the premises in "good order" during said term, and the lessor reserved the right to use the stairways, hallways and elevator-ways, then erected on said premises and intended to be used as "ways of ingress and egress to and from the entrance at the elevator door in front of said warehouse for the purposes of ingress and egress to and from the respective floors of said building; and the further privilege to enter the above rented premises at any time during the continuance of this lease, or any renewal thereof, for the purpose of making such repairs as he or they may deem necessary, and for the further purpose of regulating and attending to the water meters and

pipes and heat meters and pipes and applicances thereto belonging or in anywise appertaining."

At the close of the testimony the defendants offered six prayers, all of which were rejected except the fourth, which was granted as modified by the Court. The first three of these prayers sought to withdraw the case from the jury, first, because there was no evidence under the pleadings in the case legally sufficient to entitle the plaintiffs to recover; second, because the uncontradicted evidence showed that the damage to the plaintiffs was caused by the elements over which the defendants had no control, and, third, because the uncontradicted evidence showed that the pipe "was caused to burst by the elements over which the defendants had no control". The prayers offered by the defendant, Raffel, asserted, first, that under the pleadings there was no evidence legally sufficient to entitle the plaintiffs to recover against him, and, second, that there was no evidence legally sufficient to show that the injury complained of was caused *solely* by his negligence, and that the verdict of the jury should therefore be in his favor. The prayers presented by the defendant, Beck, asked the Court to take the case from the jury, first, because there was no evidence legally sufficient to entitle the plaintiffs to recover against him, and, secondly, because the evidence showed that the defendant, Raffel, retained control of the "regulating and attending to the pipes referred to". The remaining prayer of the defendant, Beck, presented the proposition that if the jury found that the defendant, Raffel, retained control "of the regulating and attending to the pipes referred to", then the plaintiffs could not recover against the defendant, Beck. The first three prayers of the defendants, and the prayers offered by them separately may be disposed of together.

The evidence to which we have referred tends to show that the stand pipe in the defendants' building was defective because there was no wheel or other appliance attached to the valve by means of which the water could be turned off so as to avoid injury from the freezing of the water and the

bursting of the pipe; that at the time of the accident the
weather was very cold, and that one of the usual precautions
against just such injury as the plaintiffs sustained is to turn
the water off and drain a pipe like the one referred to in this
case; that the defective condition of the stand pipe in the
defendants' building existed at the time Mr. Beck took posses-
sion of the property; that the defendants knew of the defect;
that Mr. Beck notified Mr. Raffel on the morning of the
8th of January, 1912, that one of the pipes in the building
had burst; that Mr. Raffel generally attended to repairs in
the building and undertook to have said pipe repaired; that
no attempt was made to turn the water off or to drain the
pipe the evening before the night of the accident, and that
if the water had been turned off the plaintiffs would not have
suffered the loss for which they seek to recover in this case.
The uncontradicted evidence in the case does not show that
it was unusually and extraordinarily cold during the night
of the 8th of January, in the sense that the weather was
such as the defendants could not reasonably have anticipated.
On the contrary, the evidence shows that the temperature
was two degrees lower on the 5th and 6th of January, and
that both of the defendants knew on the 8th of January that
one of the pipes in the building had burst. There was, there-
fore, evidence tending to show, as alleged in the first and sec-
ond counts of the declaration, that the defendants negligently
and carelessly suffered the pipe to be and remain in a defec-
tive condition, and negligently permitted the water in the
pipe to freeze and burst the pipe, and that the injury com-
plained of was caused by their negligence.

The rule that has been expressly recognized in this State is
the one stated in 1 *Taylor on Landlord and Tenant* (8th ed),
sec. 175: "The landlord's liabilities, in respect of possession,
are in general suspended as soon as the tenant commences his
occupation. But where injuries result to a third person from
the faulty or defective condition of the premises, or from
their ruinous condition at the time of the demise; or because
they then contain a nuisance, even if this only becomes active

by the tenant's ordinary use of the premises, the landlord is still liable notwithstanding the lease." *Owings* v. *Jones,* 9 Md. 108; *Albert* v. *State,* 66 Md. 325; *State* v. *Boyce,* 73 Md. 469; *Smith* v. *Walsh,* 92 Md. 518; and, *Mylander* v. *Beimschla,* 102 Md. 689. And where a landlord is not bound to make repairs that become necessary during the possession of the tenant, if he "assumes to do so, and neglects to perform his obligation, or in performing it, if any injury is caused for want of skill in, or proper selection of his workmen, he is held liable therefor." 1 *Taylor on L. and T., supra; Miller* v. *Fisher,* 111 Md. 91.

The fact that the landlord is liable for injuries resulting from a dangerous or defective condition of the premises does not relieve a tenant of liability for his negligence in failing to take proper precaution to avoid injury to strangers by reason of the defective condition of the property in his possession and under his control. It is said in 1 *Tiffany on Landlord and Tenant,* pp. 793-4: "The fact that the lessor is liable for injuries caused by a condition existing in connection with the premises does not relieve the tenant from liability therefor." The same principal is stated in 1 *Taylor on L. & T.,* secs. 175 and 178, and *Thompson on Negligence,* secs. 1154-1159, and in *Bears* v. *Ambler,* 9 Penna. St. 193, the Court said: "The tenant always is, the landlord may under peculiar circumstances, be liable for injury sustained by a third person, arising from negligence." See also *Miller* v. *Fisher, supra.*

There is nothing in the lease offered in evidence to relieve Mr. Beck from the consequence of his negligence in failing to exercise reasonable care to avoid injury to the property of the plaintiffs, for even if we were to assume that he could by a contract with his landlord avoid such liability, the reservation by the landlord of the right to enter upon the premises for the purpose of "regulating and attending to the water meters and pipes," would not have that effect. The defendant, Beck, was in possession and control of the entire building, and it was for the jury to say whether under all the cir-

cumstances disclosed by the evidence in the case he was guilty of negligence in failing to turn the water off and drain the pipe, and he cannot escape liability for such negligence, if found by the jury, by showing that his landlord neglected to supply the usual and proper appliances for turning the water off.

The defendants' fourth prayer was as follows: "If the jury find from the evidence that the pipe referred to burst on account of the extraordinary severity of the weather, *and that said bursting* could not have been *anticipated and* prevented by the exercise of ordinary care; and if they further find that immediately upon receiving notice of the flow of water from said bursted pipe, the defendant, Beck, immediately took proper steps to prevent any further injury or damage, then the plaintiffs are not entitled to recover, and their verdict must be for the defendants." This prayer was granted by the Court below after adding the words in italics, and we see no ground upon which the defendants can complain of the modification. There was, as we have said, evidence tending to show that the bursting of the pipe could have been anticipated and prevented by the exercise of ordinary care, and if the jury so found, and further found that the defendants failed to exercise such care, the defendants were liable notwithstanding that it was severity of the weather that caused the pipe to burst. The remaining prayers of the defendants in so far as they were free from objections, were covered by their fourth prayer.

The first exception is to the ruling of the Court below in permitting counsel for the plaintiffs to ask the witness, Wiegand, who turned the water off, if there was a wheel on the valve or a place for a wheel. The plaintiffs had a right to show the condition of the pipe and what caused the injury, and there was no error in this ruling. The second exception was to the refusal of the Court below to permit counsel for the defendants to ask the witness on cross-examination if it was not possible for the pipe to have frozen between the valve and the street, if the water had been turned off. The fact

that the pipe could freeze at some other place than where it did freeze, could not have reflected upon the issues in the case, and was entirely irrelevant.

The third exception was to the admissibility of a memorandum of the barrels containing the goods of the plaintiffs that were injured. The evidence showed that the memorandum had been made by one of the employees of the plaintiffs and that after a copy was made, compared with the original and found to be correct, the original was destroyed. It is not necessary to determine in this case whether the copy was admissible, for the witness subsequently testified without objection to the exact amount of his loss. There was no contradiction of this evidence, and the defendants could not, therefore, have been prejudiced by the admission of the copy.

The fourth and the defendant, Raffel's, first exceptions were to the admission in evidence of certain statements made by the defendant, Beck, and his letter to plaintiffs' counsel, to which we have already referred. This evidence was admissible as tending to show that Mr. Beck knew before the accident that the pipe in question was defective, and that a pipe in his building had burst during the night of the 7th of January.

The fifth, sixth, seventh, eighth and ninth exceptions refer to the testimony of the witness, Black, who stated that he had been engaged in the plumbing and gas fitting business in Baltimore City for thirty-five or forty years. The objection urged to this evidence is that the hypothetical question asked the witness as an expert contained the statement that the pipe that burst was located about seven feet from an open grating leading to the street, whereas the evidence in the case shows that between the open grating and cellar there was a wooden frame work, with windows and doors. The evidence that had been introduced prior to the asking of the question was to the effect that the pipe was located about seven feet from the open grating, and the witness said "there were doors and windows there." It nowhere appears from the evidence introduced by the plaintiffs, upon which the question was based,

·that the cellar was closed between the pipe and open grating in the sense that the pipe was not exposed to cold air or draft by reason of its location so near the open grating, and we think the question was fairly based upon the evidence that had been produced by the plaintiffs. Hypothetical questions cannot assume the existence of facts that have not been proven. *Electric Light Company* v. *Lusby,* 100 Md. 651. But the defendants could not have been injured by the omission from the question .of the fact, subsequently proved by them, that between the cellar and the open grating there was a wooden frame work in which there were windows and doors, because the witness, in the evidence objected to, stated that if a pipe was located in an open cellar, the first precaution that should be taken in order to avoid freezing of the water in the pipe was to close the cellar, and the evidence produced by the defendants tended to show that that precaution had been taken by them to the extent stated.

We see no objection to the question referred to in the tenth exception. The witness was an experienced plumber, knew the "water pressure" in that part of the city, the general conditions of the water supply and the effect of water pressure upon water pipes, and was competent to say whether the lessening of the water pressure by the pumping of fire engines in the neigborhood had a "tendency to cause the water pipe to break." But apart from any consideration of the propriety of the question, the undisputed evidence showed that the freezing of the water caused the pipe to break, and the defendants could not have been injured by the evidence elicited by the question.

The eleventh and twelfth exceptions are to the refusal of the Court to allow the defendants to ask a witness if there were not a number of the people in Baltimore City who did not turn the water off during the winter, and there was no error in these rulings. The fact that there were a number of people in Baltimore City who did not use proper care would not tend to show that the defendants were not guilty of negligence. The conditions may not have been the same,

and their failure to exercise ordinary care could not relieve the defendants from the consequences of their negligence.

The remaining exception was of the refusal of the Court below to allow the defendants to ask their witness if there was any way to prevent a pipe "from bursting as a result of an extraordinary freeze." An answer to the question would have misled the jury. Whether there was any way to prevent the water in a pipe from freezing even during extraordinary weather would necessarily depend upon the location of and conditions surrounding the pipe and the temperature. The question did not state what counsel meant by "an extraordinary freeze", and the witness could not have answered it without assuming the existence of facts not stated in the question. Moreover, the evidence showed that the injury to the plaintiffs' goods would not have happened if the water had been turned off. There was no error in the refusal of the Court to allow the question to be answered.

The plaintiffs offered but one prayer, and that instructed the jury as to the measure of damages. The only objection urged to it is that it did not require the jury to deduct from the amount of the plaintiffs' loss "such damages as was caused by a lack of precaution on the part of the plaintiffs to prevent further damage." There was, however, no evidence to show that there was any damage due to the failure of the plaintiffs to avoid further injury to their goods, and the prayer properly instructed the jury in regard on the measure of damages.

Finding no reversible error in any of the rulings of the Court below the judgment must be affirmed. Before closing the opinion we desire to call attention to the fact that the defendants made the rulings of the Court below on the prayers the subject of three separate exceptions, and to express our disapproval of such a practice, as we did in *McCosker* v. *Banks,* 84 Md. 292.

*Judgment affirmed, with costs.*