STANDARD OIL COMPANY OF NEW JERSEY *v.*
CATHERINE STERN
[No. 47, April Term, 1934.]

*Decided June 13th, 1934.*

212

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE and SLOAN, JJ.

*Walter V. Harrison*, with whom was *Robert France* on the brief, for the appellant.

*Foster H. Fanseen*, for the appellee.

URNER, J., delivered the opinion of the Court.

An automobile belonging to the appellant corporation, and operated by its salesman, collided with a taxicab in which the appellee was a passenger. The accident occurred on Hanover Street in Baltimore City about six o'clock on the evening of October 17th, 1932. The taxicab was traveling southward along the western portion of the street and was struck on its left side towards the rear by the appellant's automobile.

As a result of the collision, according to the appellee's testimony, she was "thrown out of her seat to the top of the cab, and as the seat from the cab had fallen off, she hit her back on a piece of iron, injuring her spine and bruising her head and arm." In response to a question as to how the accident happened, the plaintiff testified: "Something hit us a terrific blow. I presume it was a car. Q. Immediately before that what did you see, if anything, to your left or right? A. I didn't see anything. Q. Do you know what part of the street you were traveling on? A. Yes, sir, we were traveling on the right side of the street. Q. You were over nearer to the right or closer to the center? A. We were closer to the curb."

From her cross-examination the following is quoted: "Q. Can you tell us, please, how wide that Hanover Street Bridge is there? A. Hanover Street Bridge is very wide, has double car tracks there, pretty wide bridge and plenty of light there. * * * Q. And drive-ways on each side of the double car tracks are wide? A. Yes, sir."

The only testimony as to how the collision occurred was furnished by the driver of the appellant's car, whom the plaintiff called as a witness. He testified, in chief, that he was employed by the Standard Oil Company of New Jersey as a salesman, and was operating one of its automobiles when he had a collision with a taxicab on Hanover Street, that "the left front bumper and wheel of his automobile struck the running board on the left side of the taxicab, knocking off the left rear wheel," and that after the accident he took the plaintiff to a doctor.

"Q. What part of the street were you driving on when the collision occurred between the left front of your car and the left side of the taxicab? A. Just to the left of the center."

On cross-examination the witness testified as follows: "Q. At the time of this accident, in which direction were you going? A. North. Q. In which direction was the taxicab going? A. South. Q. At the time your car struck the taxicab, was the taxicab straight on its right side of the street—on its side of the road, I mean? A. Yes. Q. Now, Mr. Rianhard, you say that you were coming north at the time? A. Yes, sir. Q. Now, just prior to this collision, were there any other vehicles in the immediate vicinity? A. Yes, sir, the street was crowded, a good deal of traffic. Q. Was any particular vehicle near to your machine? A. There was a large truck running on my right parallel with me. Q. Parallel with you? A. Yes, sir. Q. Now, what, if anything, happened to that truck? A. As I was going north it swerved—it was raining and very hard to see—the truck swerved to the left and forced me over into the pathway—into the other lane of traffic. Q. Did the truck stop or continue? A. No, sir, it continued. Q. What, if any, signal did it give of its intention to cut over? A. None. Q. You state when it made this sudden turn it threw you into this taxicab? A. Forced me over into the lane—path of the cab."

The trial of this suit by the appellee, for personal injuries sustained in the accident, having resulted in a verdict and judgment in her favor, the case is before us on

an appeal taken because of a ruling by the lower court as to the admissibility of certain testimony, and its refusal to withdraw the case from the jury.

Upon the question as to the legal sufficiency of the evidence to support a recovery by the plaintiff, an important inference of fact to be considered is that the collision occurred when the defendant's north-bound car was being driven along a part of the street primarily intended for the use of south-bound traffic. It was while driving "just to the left of the center" that the operator of the defendant's automobile was "forced" into the "path of the cab" by the leftward swerving of the truck which had been running "parallel" to his right. It is inferable that the automobile was proceeding to pass the truck, in view of their relative courses on the highway. To accomplish such a purpose, the driver of the automobile could not properly use the portion of the street to his left of the center line unless it was clear of traffic coming from the opposite direction, nor without giving a signal of his intention to pass the truck. It does not appear from the testimony by the driver of the automobile that he gave such a signal.

Section 209 of article 56 of the Code provides: "All vehicles, motor, horse-drawn or otherwise, when being driven upon the highways of this State, upon meeting others, shall turn to the right of the center of the highway so as to pass without interference, and in rounding curves shall keep as far to the right of the road as reasonably possible; and any vehicle overtaking another going in the same direction shall pass to the left of the vehicle so overtaken, provided the way ahead is clear of approaching traffic and the operator signals the vehicle intended to be passed by the use of his horn or other signalling device: * * * any vehicle so overtaken shall promptly, upon signal, turn as far as reasonably possible to the right in order to allow free passage on the left." That provision was considered in the case of *R. & L. Transfer Co. v. State, use of Schmidt,* 160 Md. 222, 227, 153 A. 87, 89, in which it was said, in the opinion delivered for the court by Judge

Sloan: "When a driver does turn from the right to the left in overtaking another vehicle or avoiding any other obstruction to traffic on the right, he takes the risk involved in this exercise of judgment, and, as Judge Stockbridge said in *Greenbaum v. Costa, supra* [137 Md. 524, 113 A. 79], it is 'incumbent upon him to exercise an even greater degree of care than would otherwise' be the case." Applying the same statutory rule in favor of a pedestrian in *Lusk v. Lambert*, 163 Md. 335, 340, 163 A. 188, 190, this court, speaking again through Judge Sloan, said: "Assuming the appellant's testimony that she was beyond the center line when the collision occurred to be true, the appellee's car, when it struck her, did so in violation of this statute under the conditions then and there testified to; as there was no evidence that it was impracticable to travel on the right or west half of the street, or that there was any other car approaching her, which the appellee's car was attempting to pass, as it would have had a right to do, it was negligence for the appellee's car to be over the center line when it ran into the appellant."

The reference in that statement to the right of the defendant to drive his car beyond the center of the street in passing another vehicle going in the same direction is stressed by the appellant in the present case, but the statement is of course entirely consistent with the qualification, in the statute, that such a right is exercisable only when the way is clear.

The proof in this case is that the way was not clear, but that approaching on it was the taxicab in which the plaintiff was a passenger, and that there was "a good deal of traffic" on the street. The term "crowded" was used in the testimony to describe the volume of travel at the time and in the "immediate vicinity" of the accident. If it be supposed that, under the traffic conditions then existing, the driver of the defendant's car could not have safely checked its movement, in order to avoid a collision with the swerving truck, there is no explanation as to why a signal to the truck driver might not have been a sufficient precaution against such a danger. In turning to-

wards the on-coming taxicab, rather than collide with the truck, the driver of the automobile made a choice of risks with which he would not have been faced if he had not been driving parallel with the truck and beyond the street center. In our opinion, the trial court was right in declining to rule conclusively that the operation of the automobile, under the circumstances, satisfied the requirements of due care. The question was one which the jury was properly allowed to consider and determine.

In the case of *Burhans v. Burhans,* 159 Md. 370, 150 A. 795, upon which the appellant strongly relied, the sudden swerving of the automobile driven by the defendant, to avoid striking a dog in the roadway, which movement caused the car to overturn and injure its occupants, including the plaintiff, was held, under the evidence, not to be an act of negligence for which they could maintain a suit against their sister, by whom the car was being operated. A distinguishing feature of this case is that it admits of an inference of initial negligence in the operation of the defendant's automobile on the wrong side of the street center, thus creating a danger of collision with approaching cars by such an emergency movement as the evidence describes.

The other exception was taken because Dr. Nachlas, under whose care the plaintiff had been since July 14th, 1933, was allowed, when, testifying for the plaintiff, to answer the following question: "Assuming, Doctor, that this lady sustained an injury at the tip of her spine on October 17th, 1932, when she was forcibly thrown against a hard object, would it appear from your experience as a physician and surgeon that the symptoms that you found when you examined this lady were a result of that injury?" The answer was: "The clinical findings that I saw could have resulted from an injury of the type described in October, 1932." The witness had previously testified that the plaintiff was "complaining of pain and burning in the lower part of her back," and he "found evidence of a back strain or coccyxdina, that is to say, a strain at the joint where the coccyx joins the sacrum, with superim-

posed arthritis." In the course of his cross-examination, the witness testified that his physical examination of the plaintiff revealed "a slight deviation of the spine towards the right," and "there was muscle spasm present in the left erector spinæ group." He said: "They are the muscles that support the back subconsciously without any conscious effort of the patient. They were in a state of spasm, indicating loss of the protective mechanism due to the injury in the accident. * * *"

The exception to the question and answer referred to is said to be sustainable on several grounds. The interrogatory is criticized as being deficient in its hypothesis of facts upon which the medical opinion was requested. The case of *Gordon v. Opalecky*, 152 Md. 536, 137 A. 299, is cited to support that objection. In that case the hypothetical question held to have been objectionable sought to elicit an expert opinion as to whether the plaintiff's nervous and hysterical condition could have been due to described physical injuries inflicted several months previously, but omitted any reference to intermediate facts which were pertinent to the inquiry. A different problem is now presented. The inquiry propounded in this case was whether the blow received by the plaintiff at the base of her spine could have caused the physical infirmity found at that point by the medical witness a number of months after the accident in which the injury was inflicted. For the purpose of such an inquiry we think the hypothesis stated in the interrogatory was sufficient. It was argued that the question was improper because it asked for an opinion as to whether an injury sutained in the accident could have caused the condition of which the patient was complaining, when it might have been the result of later causes. There is no evidence of any other cause to which the condition described by her physician could properly be attributed. This ground of objection, therefore, must also be overruled. *Moller Car Co. v. Unger* 166 Md. 200, 170 A. 777, 780; *Celanese Corporation v. Lease,* 162 Md. 587, 596, 160 A. 801.

The testimony as to the circumstances of the accident

and the original nature and extent of the plaintiff's injury was produced after the examination of Dr. Nachlas, who was the first witness called in the case. The hypothesis submitted to him is therefor said to be wrong because it assumed facts not yet proved. To this proposition the cases of *Beck v. Hanline,* 122 Md. 68, 89 A. 377, and *Electric Light Co. v. Lusby,* 100 Md. 634, 60 A. 248, have been cited. In those cases hypothetical questions were disapproved because of their assumption of facts which were not proved by any evidence. The criticism here is that the only testimony supporting the hypothesis of the question objected to was subsequently, rather than previously, produced. That does not appear, upon this record, to be a sufficient ground for a reversal of the judgment and a remand of the case for a new trial.

*Judgment affirmed, with costs.*