ROSIE GREENBAUM, INFANT, BY HER FATHER AND
NEXT FRIEND, MORRIS GREENBAUM,

*vs.*

## JOSEPH COSTA.

*Negligence—Of Automobile Driver—Child Skating in Street.*

Whether a child, run down by an automobile, was guilty of contributory negligence because she was standing, while adjusting her skates, with one foot in the gutter and the other on the curb, *held* a question for the jury, skating by children at that point being actually or tacitly permitted by the police.

p. 527

Whether an automobile driver, who ran down a child standing on the left side of the street, was guilty of negligence, *held* a question for the jury, the street being slippery from a recent rain and the driver having veered to that side to avoid a crowd on the other, and being thus under an obligation to exercise an even greater degree of care than would otherwise have been the case.

p. 528

*Decided January 12th, 1921.*

Appeal from the Superior Court of Baltimore City (DUFFY, J.).

The cause was submitted on briefs to BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Louis S. Ashman* and *Philander B. Briscoe,* for the appellant.

*Antony Dimarco* and *Moses W. Rosenfeld,* for the appellee.

STOCKBRIDGE, J., delivered the opinion of the court.

At the conclusion of the plaintiff's evidence, at the trial of this case in the Superior Court of Baltimore City, the defendant offered four prayers. The first of these was granted, and is in the following language: "At the request of the defendant the court instructs the jury that there is no evidence in this case of negligence on the part of the defendant and that the verdict of the jury must therefore be for the defendant."

The three other prayers do not appear to have been ruled upon by the court. The subjects embraced in these prayers were: (1) the contributory negligence of the plaintiff; (2) the legal sufficiency of the evidence offered to entitle the plaintiff to recover; and (3) the legal insufficiency under the pleadings of the evidence offered to entitle the plaintiff to a recovery.

All that this Court is called upon to do is to examine the testimony as given before the jury, and see whether it warranted a withdrawal of the case from the consideration of the jury.

In the brief filed upon behalf of the appellant the following language is attributed to the court, in its remarks to the jury upon the granting of the prayer of the defendant:

"Under those circumstances, whether the man who was driving the automobile was guilty of negligence or not, it is perfectly clear to me that that little girl, standing there under those circumstances, was guilty of negligence and want of care herself, and in that way contributed to the accident. Under those circumstances, she has no right to recover in an action for damages; and, therefore, on the call of the clerk, Mr. Foreman, you will announce the verdict of the jury in favor of the defendant."

It is difficult to understand this, for the reason that if the court used the language attributed to it, the real cause for the court's action in withdrawing the case was because of

contributory negligence on the part of the plaintiff, and if the court did not use it, the statement has no proper place in the appellant's brief.

It only remains, therefore, to examine the testimony adduced before the jury, and which, for the purposes of this appeal must be regarded as true, and see if the facts recited warranted the instruction of a verdict for the defendant.

There is little, if any, conflict in the testimony, certainly not more than is usually to be found where different persons are stating their recollection of a past event.

On the evening of October 15th, 1919, at about 8.45 P. M, the infant plaintiff, a girl then thirteen years of age, was standing on the west side of Payson Street between Ashton and Ramsay Streets. She had on roller skates, and as she stood there her right foot was upon the curbstone and her left foot in the gutter. On the sidewalk and, leaning against her while adjusting her skates, was Marjorie Norford, who was about a year older than the infant plaintiff.

Payson Street at this point is rather narrower than the usual city street. On the opposite side of this street there was a carnival being held, which had attracted to it quite a number of people, estimated by the police officer on the beat at about two hundred, while in the street itself, and close up to the east curb, stood a large automobile truck with seats for the accommodation of passengers, the chauffeur of which was endeavoring to gather up a load of people to take to Catonsville and back. Gathered about the truck were quite a number of children, estimated by the police officer at about two hundred. It had rained a little earlier in the evening, leaving the street wet, and Payson Street was a smoothly paved street frequented by children upon roller skates.

About the hour before named an automobile driven by the defendant was coming north on Payson Street, and, apparently to avoid the crowd, it veered from the east side of Payson Street, where it was entitled to the right of way, to the west side. At what rate of speed it was moving nowhere clearly appears, except that both of the girls speak of it as

coming upon the infant plaintiff very quickly, so much so that neither of them saw it until it struck the plaintiff on the upper part of her left leg, knocking her over against her friend, Marjorie, who caught her and prevented her from falling.

The lamps on the machine were lighted, but no horn was blown or warning signal given of its approach. The plaintiff was struck either by the forward wheel guard or grazed by the running board of the machine, and seems to have been considerably dazed, as she stated to the policemen, who came up immediately after the accident, that she was not hurt, and she skated for half a block toward her home, but subsequent events showed her to have been sufficiently injured that a physician was called in on the following morning, and she was confined to the house between ten days and two weeks, but at the time of the trial had entirely recovered.

At the time when the accident occurred the plaintiff was "facing south," but not looking in that direction. The police officer speaks of her as facing west, but this variation in the testimony seems immaterial under the facts of this particular case. The above constitutes a brief resumé of the facts as testified to, with the one addition that Payson Street at this point was very bright.

Under such a state of facts, it but remains to apply the law of negligence and contributory negligence, as the same has been declared in a large number of cases in this State and elsewhere.

The court cannot say, as a matter of law, that the plaintiff was guilty of contributory negligence merely because she had one foot in the gutter; there was no evidence tending to show that there was even a violation of a municipal ordinance, because she was practically in the bed of the street, one foot being in the gutter, and the fact that such use of the street was either actually or tacitly permitted appears from the testimony of Officer Wallace, who says: "I guess there was a couple hundred children in the street"; and further that,

"there was a lot of roller skating and noise from the children and the crowd around the carnival."

Whether the position was or was not contributory negligence was, therefore, a question to be passed upon by the jury under proper instructions.

With regard to the defendant the condition is this: Coming north on Payson Street he was entitled to the right of way east of the center of the street. As he approached the place where this accident occurred, the large number gathered there, if nothing else, made it prudent for him to veer his machine to the left-hand or west side of the street. When upon this side of the street, no matter what his motive may have been, he lost his right of way, and it was incumbent upon him to exercise an even greater degree of care than would otherwise have been the case, and this was still further increased by the naturally slippery condition of the street following a rain. Whether this did or did not constitute negligence on his part was, under the circumstances, a question to be passed upon by the jury, and not a matter of law warranting the withdrawal of the case from their consideration, and it was clearly error for the court to instruct, as matter of law, upon either the negligence of the defendant, or the contributory negligence of the plaintiff. That was to be answered by them, under proper instructions of the court and with reference to all the surrounding conditions, as a question of fact.

Cases involving both of these questions have been so frequently before this Court for adjudication, that it has not seemed worth while to encumber this opinion with long citations. See *Stewart Taxi-Service Co.* v. *Roy,* 127 Md. 70; *Epstein* v. *Ruppert,* 129 Md. 432; *Burke* v. *Baltimore,* 127 Md. 554.

The judgment appealed from must therefore be reversed with costs, and remanded for a new trial.

*Judgment reversed with costs, and case remanded for a new trial.*