R. & L. TRANSFER COMPANY ET AL. *v.* STATE,
TO THE USE OF ROBERT SCHMIDT.

R. & L. TRANSFER COMPANY ET AL. *v.* STATE,
TO THE USE OF HERMAN MATZDORF.
[Nos. 68, 69, October Term, 1930.]

*Decided January 14th, 1931.*

The causes were argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Robert D. Bartlett* and *Edgar Allan Poe, Jr.,* for the appellants.

*J. Cookman Boyd* and *J. Cookman Boyd, Jr.,* for the appellees.

SLOAN, J., delivered the opinion of the Court.

On June 6th, 1929, a boy, Bertold Schmidt, aged seven years, and a girl, Elfreda Matzdorf, six months older, were killed in a collision with a truck of the R. & L. Transfer Company at the intersection of an alley with the west side of Caroline Street in Baltimore. Suits were brought in the name of the State, for the use of the respective fathers of the children. The Schmidt case was tried before a jury, and, from the judgment on a verdict in favor of the plaintiff appellee, the defendants appealed. The Matzdorf case was

submitted to the court sitting as a jury, with the addition of such testimony as was necessary to identify Elfreda Matzdorf as one of the victims of the collision and to prove her age and relationship to the equitable plaintiff, and the same verdict rendered and judgment entered as in the Schmidt case, from which an appeal was taken.

It appears that about 3.30 o'clock on the afternoon of June 6th, 1929, a truck of the R. & L. Transfer Company was proceeding northward on the right, or east, side of Caroline Street, in third gear (the truck having four forward gears), at a speed of from eight to ten miles an hour. At a point opposite the end of the alley, which did not intersect Caroline Street, a number of children, estimated from six to ten, were playing in the street. The truck driver blew his horn, and, the children paying no attention to his warning, he pulled over to the left side of the street, which was clear of traffic, none coming from the opposite direction. When directly opposite the east end of the alley, the driver, having turned his head toward the alley, saw two children riding a toy wagon coming at "a good rate of speed" toward the left side of the truck. He said: "They were at the intersection when I saw them." On cross-examination he said they were between the building line and the curb, which would place them on the line of the sidewalk. "I deliberately stepped on my brakes, took my hand off the gear shift and still left her in gear, and I turned the truck a little bit to look back because I have an open view, and they hit the rear wheel and then this woman gave a scream and I jumped off and went back to the children. They were about six feet in back of the truck." A woman who at the time was living in the fourth house above the alley (the houses are in a block, each house twenty-three feet wide) first noticed the truck when it was "half-way past the alley," and did not really pay any attention to it until she "saw the children go under it." No one testified exactly from observation just what contact there was between the children and the truck. The driver said there was some red paint on the grey wheel of the truck which he thought came from the toy wagon. The

children's bodies were not crushed, and the only apparent injury was to their heads, so that they must have been pitched headlong into the truck.

Caroline Street is sixty feet wide; sidewalks ten feet; driveway forty feet from curb to curb. The alley is seventeen feet wide, extending westward from Caroline Street. The grade of the street is slightly rising to the north, the direction the truck was going. The alley is paved with concrete, and, according to the photographs in evidence, is steep. The plat in evidence shows the alley to be of the uniform width of seventeen feet from its intersection with the Caroline Street driveway west, but the photographs show its width to be perhaps two or three feet less across the sidewalk, and from the building line west it is of its full width. The testimony of the driver was that the extreme length of his truck was about twenty feet, and its width about eight feet. The Code (article 56, sec. 194) fixes the extreme width of motor vehicles at ninety-three inches. The testimony of three policemen who came to the scene of the accident was that the rear wheels of the truck were midway of the alley, so that its front end must have been from eleven to twelve feet beyond the intersection of the north side of the alley with the street. The driver testified that, as soon as he saw the children, he put on his brake and stopped the truck in one and a half feet, and that the truck, because it was left in gear, jumped forward about six feet. At that, he was seated within a foot or two of the north side of the alley when he saw the children approaching the car. He said his glance was toward the left and rear, and that this was due to reaching for the gear shift so as to change from third speed to high. The three policemen testified that the truck was standing on the left, or west, side of Caroline Street, eight to ten feet from the curb; the witness for the defense put it in the middle of the street. Both sides had it on the left of the center, so that it makes no difference so far as the legal situation is concerned.

The plaintiff contends that, because the truck at the time

of the accident was on the left of the center of Caroline Street when the children collided with it, this was *prima facie* evidence of negligence legally sufficient to take the case to the jury. The contention is also made that the doctrine of last clear chance applies, but it is so manifest that there was no time for the driver to do anything to avoid the consequences of the children's negligence that there is no reason to incumber this opinion with an extended discussion of that doctrine as applied to the facts of this case.

For the contention that the fact of the truck being on the left of the center of Caroline Street is legally sufficient proof of negligence, the appellee relies upon the statement in *Greenbaum v. Costa*, 137 Md. 524, 528, 113 A. 79, 81, that "when upon this side of the street, no matter what his motive may have been, he lost his right of way, and it was incumbent upon him to exercise an even greater degree of care than would otherwise have been the case." That was a case wherein the driver of an automobile, in order to get around a large crowd assembled on the (his) right side of the street, veered to the left and went so far as to strike a girl who was standing with one foot on the left, or west, curbstone and the other in the gutter. The sentence in which appears the quotation, "he lost his right of way," is not wholly consistent with the one preceding it, which is, "As he approached the place where this accident occurred, the large number gathered there, if nothing else, made it prudent for him to veer his machine to the left-hand or west side of the street." Whether one loses his right of way in going to the left of the center of the road depends on circumstances then existing on his side of the road. When the right side of the road is obstructed, he can use the left side to get by the obstruction, provided the way ahead on the left is clear; if it is not clear, it behooves him to stop until the left is open, and when it is open that is his right of way until he clears the obstruction. What Judge Stockbridge meant by losing the right of way is qualified by what he said immediately before and immediately after the expression "he lost his right of way."

In *Ottenheimer v. Molohan,* 146 Md. 175, 126 A. 97, where the defense was that the boy was struck by an automobile which was on the right side of the road, an accident which might have been avoided if the automobile had been turned toward the left, this court, in an opinion by Judge Adkins, said (page 184 of 146 Md.) : "It cannot be said as a matter of law that defendant was free from negligence in passing, on the very edge of the road at a rapid rate of speed, small children playing at the roadside, when there was nothing to prevent him from turning to the middle or farther side of the road." It cannot consistently be said that the prudent thing for a driver to do, in order to avoid an accident, is to turn from the right side of the road if the way be open, and that in so doing he is a violator of the law and therefore negligent.

The accident in this case happened on the 6th day of June, 1929. On the 2nd day of April, 1929, the Act of 1929, ch. 224 (Code, art. 56, sec. 209), went into effect, by which it was provided: "All vehicles, motor, horse-drawn or otherwise, when being driven upon the highways of this State shall at all times keep to the right of the center of the highway upon all highways of sufficient width, except upon streets or roads where traffic is permitted to move in one direction only, and except when overtaking and passing another vehicle, and unless it is impracticable to travel on such side of the highway." It will here be seen that the rule of the road, as prescribed by the Legislature, permits a vehicle to turn from the right to the left of the road "when overtaking and passing another vehicle, and unless it is impracticable to travel on such side of the highway," and the situation described by Judge Adkins in *Ottenheimer v. Molohan* is an illustration of the fact that a driver may maintain his right of way and at the same time be negligent. When a driver does turn from the right to the left in overtaking another vehicle or avoiding any other obstruction to traffic on the right, he takes the risk involved in this exercise of judgment, and, as Judge Stockbridge said in *Greenbaum v. Costa, supra,* it is "incumbent upon him to exercise an even greater

degree of care than would otherwise" be the case. It was "impracticable" for the truck driver, Shvanda, to continue on the right side of Caroline Street because of the children playing in the street. He had his choice of two things: To stop until the crowd heeded his warning and dispersed, and thus obstruct traffic himself, or, the left being clear of traffic, to turn to the left and go on his way. He chose the latter, and in so doing we are not aware of any theory by which he could be said to have been negligent.

But, says the appellee, the truck driver should have seen the children up the alley and thus have avoided the consequences of their negligence, but we are not convinced from any facts appearing in the record that the driver should have anticipated that children were going to coast down a concrete paved alley, described by Mrs. O'Leary, who lived in a house bordering on it, as very steep, into Caroline Street in the way of traffic on that street. As stated by Judge Von Moschzisker, then in the Court of Common Pleas, regarding a coasting collision, in an opinion adopted by the Supreme Court of Pennsylvania as the opinion of that court in *Eastburn v. U. S. Express Co.,* 225 Pa. 23, 73 A. 977: This was not a case of one in plain sight and about to cross the street in front of a horse, with opportunity on the part of the driver to see the person and avoid an accident, but was a case of a sled moving rapidly, beyond sufficient control of the boys to avoid a collision with one who had no reasonable expectation to look for such an event." *Wetherill v. Showell,* 264 Pa. 449, 107 A. 808. The appellee insists that, if the driver had looked up the alley he could have seen the children, though he would have had no reason to expect children playing in an alley between street intersections to coast on a toy wagon into the street. If he had been looking up the alley he might have taken his mind off the children playing in the street, whom he was avoiding, and at the same time failed to keep a lookout ahead for approaching traffic. In other words, the appellee was requiring the driver to do too many things to be careful in the doing of any of them. *Kiley v. Boston El. Ry. Co.,* 207 Mass. 542, 93 N. E. 632.

The appellee alleged that the alley was a public alley, but whether public or private seems to us to make little, if any, difference so far as the issue in this case is involved. From the photographs, it looks like a service alley, affording a rear entrance to the properties on either side and to the family garages, which appear to take up all the available space.

The appellee raises the question, new in this court, that, because the appellants did not except to the granting of the plaintiff's prayers, they are forbidden to press their exception to the refusal of their prayers for a directed verdict in their favor. No authorities are cited except those wherein this court has held that a conceded prayer becomes the law of the case, and that the court cannot then grant a prayer which denies the proponent of the conceded prayer the benefit of his conceded instruction. There are no authorities cited for the point, and in this court there are none. It is no uncommon practice for appellants to stand on one or more prayers and to abandon the others. The appellants stand on three prayers for an instructed verdict, and inasmuch as this court is of the opinion that there is no legally sufficient evidence of the driver Shvanda's negligence, the defendant's A prayer should have been granted. As this disposes of the whole case, it is not necessary to pass on the question of the children's contributory negligence or the public or private character of the alley.

*Judgments in both cases reversed, with costs to the appellants.*