EBERT ICE CREAM COMPANY ET AL. *v.* VIRGIL R. EATON, FOR HIMSELF, AND TO THE USE OF AETNA LIFE INSURANCE COMPANY

[No. 13, October Term, 1936.]

*Decided November 12th, 1936.*

The cause was argued before BOND, C. J., URNER, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Leslie N. Coblentz* and *John Y. Offutt,* with whom were *John S. Newman, Parsons Newman,* and *Joseph Bernstein,* on the brief, for the appellants.

*Rignal W. Baldwin, Jr.*, with whom were *Harold Tschudi, William Storm,* and *William D. Macmillan,* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

In this case Virgil R. Eaton, for himself and to the use of the Ætna Life Insurance Company, appellee, sues the Ebert Ice Cream Company and Glenn A. Stone, appellants, under section 58, article 101, of the Code, for injuries sustained by him by the alleged negligence of a third party while in the course of employment for which he had been allowed compensation. From a judgment in favor of the plaintiff, the defendants appeal. The only questions submitted and argued were the legal sufficiency of the evidence of primary negligence, and whether the trial court should have held the plaintiff guilty of contributory negligence as a matter of law, and have directed a verdict for the defendants.

The evidence is that the plaintiff, Virgil R. Eaton, on the 28th day of June, 1934, was in the employ of Markell & Ford, coal dealers, of Frederick. His home was located on the east side of North Market Street, between Eighth and Ninth streets. On that day he drove home to lunch, parking his car on the west side of the street, opposite his residence. After lunch, in response to a call from his employer's office, the plaintiff left his house, and while on the way to his car across the street met with the accident which resulted in this case. He testified that when he reached the curb on the east side of street he "stood there, looked out North Market Street, then I looked south." He saw two cars, the second a light Ford truck, approaching from the south. When he first saw them they were from three to four hundred feet away, south of Eighth Street, which is about 150 feet from his house. The location of the cars was given by the plaintiff with reference to certain named residences, and buildings, and there is no certain evidence from which we can say how far away the trucks were when he was about to cross the street. There is, however, enough in the record

for us to say whether there is legally sufficient evidence of primary negligence to take the case to the jury, or whether there was sufficient evidence of the plaintiff's negligence to direct a verdict against him, as a matter of law, in attempting to cross the street between intersections with two cars, one following the other, approaching from his left. What he did say, and it is not only not disputed, but is corroborated and conceded, is that the plaintiff passed in front of the first car, and was struck by the second, defendants', after he had crossed the center of the street while going toward his car, which was parked against the curb on the west side of the street.

The first car, owned and driven by George W. Ogle, was proceeding northward on Market Street at a speed of from twenty to twenty-five miles an hour, and his description of what happened was: "As I passed Eighth Street corner I noticed Mr. Eaton had stepped off the curb and started across the street, so naturally I proceeded on. He had plenty of room to pass in front of me, and as I began to get closer to him I pulled to the right, naturally, not much but maybe a little bit, in order to give him plenty of room to pass on over, and waved my hand to him." "He stepped over the center of the street, and plenty of room in front of me for me to go ahead. I proceeded on and just then the truck hit him." He heard the truck coming "just a little bit before it hit him." He then "pulled to the East curb and stopped," alighted, and went to the assistance of the plaintiff, who had been thrown by the truck with his head lying on the west curb. When the Ebert truck stopped it was to the north of the witness and west of the center of the road.

Raymond Brown, a colored man, was standing on the southeast corner of Market and Eighth streets when the accident happened. He saw Mr. Eaton "come off his porch and start across the street." "He passed over four or five feet. After he crossed this car over I saw the ice cream truck approach." "To the west of the center of the street." "I saw the ice cream truck when it struck him." "The truck attempted to pass the truck in front

of him." "It was to the left of the center of the street." "He was going fast." "I couldn't see him in front of the other truck, but I just got a slight glimpse of him just before the ice cream truck struck him." "Eaton passed the Ogle truck. He crossed over in front of the truck. The Ogle car, that is, the first car, passed between Eaton and the curb." He said the Ogle car was to the right of the center.

Joseph F. Rhoderick was standing inside his doorway at 740 on the east side of North Market Street, which is two doors south of Eighth Street. He saw Ogle's car go by, followed by Ebert's truck forty to fifty feet behind, both going at about the same speed, twenty to twenty-five miles an hour. His attention was attracted by the screeching of brakes. He stepped out of the doorway, looked in the direction of the noise, and saw the body of a man in the air. He ran directly to him, and found the plaintiff lying with his face on the west curb, and saw Ebert's truck "pointed in towards the (west) curb." He and Ogle put the plaintiff in the defendants' truck and went with him to the hospital. After leaving the hospital he went to his home, thence to the scene of the accident, where he and Officer B. H. Cecil of the State Police measured the skid marks made by the defendants' car; "they started just about the center of the highway and ran almost to the west curb." Officer Cecil testifying that the skid marks made by both wheels stopped seven feet nine inches from the west curb. The left mark "went at an angle for a length of 54 feet, 6 inches north"; the right skid mark was 40 feet long. The street was paved with black macadam. *Cumberland & Westernport Transit Co. v. Metz*, 158 Md. 424, 452, 149 A. 565.

Glenn A. Stone, one of the defendants, and the driver of the Ebert truck, testified that he followed Ogle's car down Market Street, separated from it about fifteen or twenty feet, at a speed of twenty to twenty-five miles an hour. "I was following along behind Mr. Ogle and all at once he just pulled right across the road to the right and I pulled out to the left to pass him and Mr. Eaton stepped

right in front of me. * * * He didn't pull clear over
against the curb. I couldn't say how far away from it he
was. * * * My automobile was about the middle of the
road I reckon. * * * I pulled over to keep from hitting Mr.
Ogle. I thought he was going to stop. When he slowed
up I pulled out to go around him. * * * I hit Mr. Eaton at
that time. * * * Just when he stepped in front of the
truck." He "didn't see him before when he came out
from the side or any place." Upon seeing Mr. Eaton, he
threw on the brake and pulled to the left. Asked, "What
did you pull to the left for?" he said, "Thought I would
miss him." Asked what he observed about Eaton when
he first saw him, he answered: "I couldn't tell. He just
stepped right in front of the truck. That's all there was.
I didn't see him till he stepped out in front of the other
till he was in front of me." He couldn't see him because
"he was in front of the other automobile." The plaintiff
said he was no more than three feet from his car when he
was struck. "I was almost certain I could reach my
machine when he rolled me down." On cross-examina-
tion Stone said his brakes were not equally adjusted,
"one of them stopped first. One wheel of the truck slid
first." He did not see Eaton leave the curb and walk in
front of Ogle's car. "Just because of that car is all I
can say. The car was in front of me."

There were two exceptions to evidence, one to the re-
fusal of a motion for a mistrial, and one to the rulings on
the prayers. The defendants have abandoned all excep-
tions except the rulings on their first and second prayers
for an instructed verdict on the grounds of contributory
negligence and legally insufficient evidence of the defend-
ants' negligence, respectively, argued and briefed in the
reverse order.

As the defendants state their case on primary negli-
gence, "there is nothing in the case to show that anything
done, or not done, by the appellants was the proximate
cause of the appellee's injuries."

The rule of the road applicable to this case, so far
as it relates to the Ebert truck passing the Ogle car, is

contained in article 56, sec. 209 (Acts 1929, ch. 224), where it is provided that: "All vehicles * * * when being driven upon the highways of this State shall at all times keep to the right of the center of the highway upon all highways of sufficient width, * * * except when overtaking and passing another vehicle, and unless it is impracticable to travel on such side of the highway * * * any vehicle overtaking another going in the same direction shall pass to the left of the vehicle so overtaken, provided the way ahead is clear of approaching traffic and the operator signals the vehicle intended to be passed by the use of his horn or other signalling device." It will be observed that the signal required by the statute is intended for vehicles and not for pedestrians, though we do not mean to say that no signal need ever be given to warn pedestrians of danger. In this case Stone did not warn Ogle of his intention to pass him. By the same section of the Code it is provided that: "All pedestrians shall have the right of way at street crossings in the towns and cities of this State, except where traffic is controlled at such crossings by traffic officers. Between street crossings in such towns and cities, vehicles shall have the right of way." The mere fact, however, that a pedestrian crosses a street between intersections (*Legum v. State,* 167 Md. 339, 173 A. 565; *Lusk v. Lambert,* 163 Md. 335, 163 A. 188; *Nelson v. Seiler,* 154 Md. 63, 139 A. 564), or that a motorist crosses the center line of a street (*R. & L. Transfer Co. v. State,* 160 Md. 222, 153 A. 87), is not necessarily negligent; it is what either does or both do under such circumstances that determines the question of negligence.

The defendants strongly rely upon the opinion in *R & L. Transfer Co. v. State,* 160 Md. 222, 153 A. 87, for their contention that there was no legally sufficient evidence of negligence on the part of Stone in this case to take the case to the jury. In that case, it is true, we held there was no evidence of negligence in the driver being on the left side of the road, but, aside from the fact that in that case and this the accident occurred on the left of the cen-

ter of the road, the facts and circumstances bear little resemblance. In the *R. & L. Transfer Co.* case two children were coasting down an alley, midway of a block, and collided with the truck; they came into the street to the left of the driver. In this case the pedestrian (plaintiff) was walking across the street; he saw both cars three or four hundred feet away, the Ebert truck following the Ogle car, both going at a moderate speed, and they so continued until the plaintiff had passed in front of the Ogle car and had crossed the center line of the street and was on his way to his own car. Stone said he did not see the plaintiff until "he stepped right in front of the truck"; and immediately he threw on the brake, and pulled to the left, thinking he would miss him. His truck skidded diagonally across the road, the left wheel leaving a mark 54½ feet long, the right a mark 40 feet long, the right brake not taking hold until the car had gone 14½ feet. This might have had something to do with the accident. Ogle said he was driving about "two-thirds toward the center of the street," when Eaton was "just about the center of the street," when he saw him passing in front of his car he "slackened a little bit," "just a slight bit to give him plenty of room * * * maybe a foot." With these facts in evidence, the jury might have concluded that defective brakes contributed to the accident (*Goetze, Inc. v. Johnson,* 164 Md. 201, 164 A. 236), that there was ample space for the truck to pass between the Ogle car and the plaintiff, and that he saw or should have seen the plaintiff cross the sidewalk in front of his house, step into the road, and pass in front of Ogle's car over the center of the road, seen and testified to by Brown, the colored man, who was 150 feet to the south, or that he should have had his car under control when he crossed the center line of the street to pass Ogle. These are all facts which a jury should decide, and it was so decided in *Lusk v. Lambert,* 163 Md. 335, 163 A. 188.

The trial court was right in refusing the defendants' second prayer for a directed verdict.

The defendants' first prayer asked a directed verdict on the ground of the plaintiff's contributory negligence. Of course, this prayer presupposes there is primary negligence, otherwise the plaintiff's negligence would be the proximate and sole cause of his injuries.

It has been held by this court, contrary to some text-writers, that it is not *prima facie* evidence of negligence for a pedestrian to cross a street between intersections, but that "the question is one of ordinary care only, entirely for the jury." *Nelson v. Seiler,* 154 Md. 65, 77, 139 A. 564, 569; *Lusk v. Lambert, supra.* It has also been decided that a pedestrian cannot, between intersections, walk blindly into on-coming traffic, having the right of way, and be heard to say that he did not see a danger that he would have seen had he looked. *Webb-Pepploe v. Cooper,* 159 Md. 426, 431, 151 A. 235; *Gitomir v. United Rwys. & Elec. Co.,* 157 Md. 464, 467, 146 A. 279.

The plaintiff's testimony, and in this he is supported by Ogle, and in many essentials by Brown, looked south on Market street from the sidewalk, and again when he was ten or twelve feet out in the street "looked up. Mr. Ogle was coming along by Long's place—that is two doors this side of Eighth Street corner." The defendants here contend that "without looking again at the second machine, which was following close behind the leading one, (he) deliberately walked across in front of the first one, which turned right to avoid him, and stepped directly into the path of the second machine at a time when it was so close upon him that he was struck before the leading machine had passed him by more than its own length." We do not consider this the proper inference to draw from the evidence. When the plaintiff first looked up Market Street, he saw two cars coming toward him, and, when he again looked, the Ogle car, still in front, was nearing him, and he had ample space to cross in front of it. It slackened its speed "a little bit," and pulled to the right "a slight bit to give him plenty of

room"; "he was just about the center of the street" when it passed him. When he reached that point, it was not negligence for him to assume that the way would be unobstructed by a car approaching from his left, particularly by a car which a few seconds before he had seen following the Ogle car on the right side of the street. It was not necessarily negligent for him to assume that they would pass him in the same order while he crossed the full width of the street. In *Coplan v. Warner*, 158 Md. 463, 466, 149 A. 1, it was held that a pedestrian might have been found exercising due care in assuming that a vehicle need not be looked for on the side of the street that would be its left hand side. *Bielski v. Rising*, 163 Md. 492, 494, 163 A. 207. The evidence is that the plaintiff looked to his left twice while on the right of the center of the road, when it would have been negligence not to have looked. *Lusk v. Lambert*, 163 Md. 335, 342, 163 A. 188; *Webb-Pepploe v. Cooper*, 159 Md. 426, 151 A. 235. The one, in this case, whose duty it was to see that the way on the left was clear before he appropriated the left side of the road was Stone, the driver of the Ebert truck, and before he attempted to pass the Ogle car (*R. & L. Transfer Co. v. State, supra*), and his chief act of negligence was in proceeding as he did, with his car out of control. Under the facts here presented, we do not find a situation where the minds of ordinary men might not differ as to whether the conduct of the plaintiff was negligent, and in our opinion the defendants' first, contributory negligence, prayer was properly refused.

*Judgment affirmed, with costs.*