PAUL GESCHWENDT ET AL. *v.* ELLENORA YOE
PAUL GESCHWENDT ET. AL. *v.* WILLIAM G. YOE
[Nos. 1, 2, April Term, 1938.]

*Decided April 22nd, 1938.*

The causes were argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*J. Calvin Carney,* with whom was *Preston A. Pairo* on the brief, for the appellants.

*R. Samuel Jett,* with whom was *W. Hamilton White-ford* on the brief, for the appellees.

MITCHELL, J., delivered the opinion of the Court.

The record in this case embraces two appeals growing out of the same accident, from judgments entered, respectively, in the Superior Court of Baltimore City, in favor of Ellenora Yoe, for personal injuries sustained by her, and in favor of William G. Yoe, her husband, for medical expenses and loss of her services, by reason of said injuries.

The appellant Paul Geschwendt was the owner of a Diamond Cab; the appellant George W. Bowen was the operator of the cab at the time the injuries complained

of were sustained; and the circumstances under which Mrs. Yoe was injured were as follows:

She lived on the east side of North Bentalou Street, between Westwood Avenue and Presbury Street; Westwood Avenue being the first street south of North Avenue, paralleling the same. The general course of Bentalou Street is north and south; the courses of Westwood and North Avenues and of Presbury Street are east and west, and according to the testimony an alley intersects Bentalou Street on the north, at a point between Westwood and North Avenues.

The plaintiff testified that on the evening of January 27th, 1936, about 7:30 o'clock, she walked from her home along the east side of Bentalou Street to the intersection of said street with North Avenue. It was freezing weather, and had been so for several days, and in consequence the streets were covered with ice and snow. She had intended to cross to the west side of Bentalou Street at the regular pedestrian crossing, but at this point she found too much snow and ice, and, as she did not have rubber shoes, she retraced her steps fifteen or twenty feet, and decided to cross at that point, where the surface of the street appeared easier to walk on, because it was rougher. Two or three automobiles facing north were parked at the curb, and she started to cross in front of the car nearest North Avenue. Before she entered the street she looked both north and south and saw an automobile approaching from the south; she then walked past the parked cars, looked again in both directions, saw the northbound car again, and, noting that it was then at Westwood Avenue, or a block away, proceeded to cross. When she reached a point two-thirds of the width of the street, she looked in both directions again, saw the same car approaching from the south, and also saw a car approaching from the north at North Avenue. She then waited to see whether the latter car was going to turn at the avenue or continue southward. She was then asked:

"Q. Did this car continue south on Bentalou Street? A. Yes, sir.

"Q. What did you do? A. I stood perfectly quiet.

"Q. What did the southbound car do? A. Passed me by.

"Q. Now, Mrs. Yoe, after this southbound car passed you, will you tell us what is the next thing that you recall? A. The next thing—I could hear the screeching of brakes and chains, and I noticed a light at my feet. I was standing with my back to the south of Bentalou. I have never moved an inch. I wouldn't have dared to have moved, because the street was nothing but ice, and then all I knew I was hit and knocked into this snow pile into the curb.

"Q. Which curb? A. The west side of the street."

She then testified that she recalled being walked down the hill to the cab; she did not remember who picked her up, but she was assisted to the cab and placed in it by some one; and that at that time the cab was "down fully to the alley."

Mrs. Yoe was the only witness produced by the plaintiffs who could detail the immediate incidents connected with the accident, and at the conclusion of the plaintiffs' case a demurrer prayer was offered by the defendants and rejected by the trial court.

On behalf of the defendants, the driver of the taxicab which caused the injury, and three passengers in the car, testified substantially as follows: That the defendant George W. Bowen was driving the taxicab at the time of the accident; that he had stopped south of Westwood Avenue to discharge another passenger, and that, upon approaching Westwood Avenue, he slowed down to permit another car to pass in front of him; he then proceeded northward on Bentalou Street at a speed of from ten to fifteen miles an hour, and when about half way of the block between Westwood Avenue and North Avenue the impact took place. All of the defendants' witnesses confirm the testimony of Mrs. Yoe, in that the street was filled with snow and ice, and that the weather was at

freezing point and the highway slippery. They fix the location of the accident as being approximately half way of the block, and in any event south of the alley which the testimony indicates was at least one hundred feet south of the North Avenue intersection. Their testimony is also to the effect that there were definite lanes of travel north and south, cut in the ice and snow by heavy vehicular traffic, and that, when once in these lanes, it was difficult to get an automobile out of them. The chauffeur of the cab stated that, when the accident happened, he was to the right of the center of the street, and that between the two lanes of traffic there was a space, which some of the witnesses termed an "island," in which Mrs. Yoe was standing, when he first saw her. He did not see her until he was within ten feet of her. At that time he saw a car coming south in the other lane of traffic, and about the same time the two cars passed, Mrs. Yoe took two steps backward, in front of the taxicab, and at a time when he could not stop before hitting her. It was shown on cross-examination that the witness Bowen had the sight of but one eye. One of the defendants' passenger witnesses stated that he did not know whether the southbound car had passed Mrs. Yoe before the impact, and another that he first noticed the other car when he heard the noise created by the application of the brakes to the taxicab in which he was riding, and none of the defendants' witnesses saw Mrs. Yoe cross the street to the point at which she was standing when each of them first saw her, and when she was knocked down. The width of Bentalou Street is shown to be forty-four feet.

The only exceptions pressed on appeal relate to the rejection of the defendants' A prayer, which sought to withdraw the case from the jury because there was no legally sufficient evidence to entitle the plaintiff to recover, and their B prayer, which asked an instruction that the plaintiff Ellenora Yoe was guilty of negligence directly contributing to the accident. These rulings will now be considered.

At the outset it will be noted that there is a conflict in the testimony as to whether the accident happened midway of the block between Westwood and North Avenues, or a few feet south of North Avenue, as testified to by Mrs. Yoe. In our opinion it makes no difference, as in any event it did not happen at a street crossing, because Mrs. Yoe definitely testified that she retraced her steps, and started to cross Bentalou Street at a point below the crossing, or where a pedestrian would not ordinarily cross the street.

Section 209 of article 56 of the Code, as amended by Laws 1929, ch. 224, in part provides that: "All pedestrians shall have the right of way at street crossings in the towns and cities of this State, except where traffic is controlled at such crossings by traffic officers. Between street crossings in such towns and cities, vehicles shall have the right of way." In *Legum v. State*, 167 Md. 339, 347, 173 A. 565, 569, this section was construed by Judge Offutt as follows: "It is implicit in that statute that while a pedestrian may lawfully travel on or across a city street 'between street crossings,' his right to so use the street is subordinate to that of vehicular traffic in the lawful use thereof, and that while vehicular traffic may lawfully traverse street crossings, its right so to do is subordinate to that of pedestrians in the lawful use of such crossings, and that the relative rights of the operators of motor vehicles and pedestrians, in respect to any question of negligence arising from their use of the highway, must be tested by those rules."

And in *Ebert Ice Cream Co. v. Eaton*, 171 Md. 30, 187 A. 865, it was said: "The * * * fact * * * that a pedestrian crosses a street between intersections (*Legum v. State*, 167 Md. 339, 173 A. 565; *Lusk v. Lambert*, 163 Md. 335, 163 A. 188; *Nelson v. Seiler*, 154 Md. 63, 139 A. 564), or that a motorist crosses the center line of a street (*R. & L. Transfer Co. v. State*, 160 Md. 222, 153 A. 87), is not necessarily negligent; it is what either does or both do under such circumstances that determines the question of negligence."

With this rule of traffic in mind, we have a situation in which there is testimony tending to prove that the appellee, Mrs. Yoe, entered the street at a point other than a pedestrian crossing, at a time when the taxicab which injured her was more than a block away, and that she had crossed the center of Bentalou Street, and was standing between the two lines of traffic when she was hit. According to her testimony, she was two-thirds of the way across the street, but in any event the testimony of the appellants corroborates her statement that she was west of the center of the street when she was first seen by any of the appellants' witnesses. It is established by all the witnesses to the accident that the weather was at freezing point, and that the street was covered with snow and ice. In other words, all the witnesses agree that the plaintiff was not hit while she was in the act of crossing the street to a point beyond the center line; her contention being that the point of impact was well to the west of that line, and the contention of the defendants being that, from a point of apparent safety, she suddenly stepped backwards almost immediately in front of the taxicab of the defendants, upon the theory that she was getting out of the southbound line of traffic.

Under this state of the testimony, it is our conclusion that there was legally sufficient evidence to warrant the submission of the case to the jury. Before such a prayer can be granted, the court must assume the truth of all the evidence before the jury tending to sustain the claim or defense, as the case may be, and of all inferences of fact fairly deducible from it; and this, though such evidence be contradicted in every particular by the opposing evidence in the case. *McElderry v. Flannagan's Admr.*, 1 H. & G. 308; *Leopard v. Chesapeake & Ohio Canal Co.*, 1 Gill 222; *Jones v. Jones*, 45 Md. 144, 154; *Mallette v. British-American Assn. Co.*, 91 Md. 471, 46 A. 1005; *Moyer v. Justis*, 112 Md. 220, 76 A. 496; *Taxicab Co. of Baltimore v. Emanual*, 125 Md. 246, 93 A. 807; *Universal Credit Co. v. Merryman*, 173 Md. 256, 195 A. 689.

It is well settled that the criterion for the determination of this question is whether the evidence is of such probative force as to enable an ordinarily intelligent mind to draw a rational conclusion therefrom in support of the proposition sought to be manifested by it; and as stated in 2 *Poe, Pl. & Pr.* sec. 295: "A prayer seeking to take the case away from the jury on the alleged ground of total failure of evidence to support the plaintiff's case will not be granted, if there is any evidence, however slight, legally sufficient as tending to prove it, that is to say, competent, pertinent and coming from a legal source, but the weight and value of such evidence will be left to the jury."

What we have said in connection with the demurrer to the evidence practically decides the question of contributory negligence, because, in order to sustain the contention that Mrs. Yoe should be judicially declared to have been guilty of such negligence, it would be necessary to disregard or disbelieve her testimony as to her position in the street at the time of the impact. It would also be necessary to entirely ignore the slippery condition of the street, and the consequent possibility that, instead of her stepping from what the undisputed evidence tends to show was a position of safety, the taxicab skidded and struck her. The testimony is uncontradicted that the plaintiff knew that the taxicab was proceeding northward, and she also knew that another automobile was moving southward.

It was not for the trial court, under such circumstances, to assume as an undenied fact that the plaintiff walked from the position in which the uncontradicted testimony placed her, into the path of the northbound car, of the movement of which she was cognizant. *Merrifield v. Hoffberger Co.*, 147 Md. 134, 127 A. 500; *Bielski v. Rising*, 163 Md. 492, 163 A. 207; *Taxicab Co. v. Ottenritter*, 151 Md. 525, 135 A. 587; *Shaivitz v. Etmanski*, 164 Md. 125, 164 A. 169; *Sheriff Motor Co. v. State, use of Parker*, 169 Md. 79, 179 A. 508; *Sheer v. Rathje*, 174 Md. 79, 197 A. 613.

In our opinion there was no error in refusing the prayer, as the issues of both primary and contributory negligence were properly submitted to the jury by the granted instructions.

*Judgment affirmed in both appeals, with costs to the appellees.*