BOYD, ADMINISTRATOR, ET AL. *v.* SIMPLER

[No. 164, September Term, 1959.]

*Decided March 15, 1960.*

*Dissenting opinion filed March 23, 1960.*

128

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*K. Thomas Everngam* and *William H. Adkins, II,* for the appellants.

*F. Gray Goudy,* with whom was *Herbert Burgunder, Jr.,* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

After submitting the questions of primary negligence of the defendant and contributory negligence of the plaintiffs' decedent to the jury and the rendition by the jury of verdicts in favor of the plaintiffs, the learned trial judge granted motions by the defendant for judgments *n.o.v.,* on the ground that the plaintiffs' decedent had been guilty of contributory negligence as a matter of law. There are two actions involved: one by the administrator of Pearl M. Boyd, who was killed by an automobile operated by the appellee, under Code (1957), Article 93, Section 112, to recover for the decedent's pain, suffering and funeral expenses; the other was brought by the State, to the use of the widower and infant daughter of the decedent, under Code (1957), Article 67, Section 4 (Lord Campbell's Act).

The defendant-appellee concedes that the question of his alleged primary negligence was properly submitted to the jury, hence the principal issue is: Did the evidence disclose that Mrs. Boyd was guilty of contributory negligence as a matter of law? If she were, that disposes of the appeal.

In making this determination, the testimony must be examined in a light most favorable to the appellants. On June 13, 1959, at about 8:15 p.m., while it was still broad daylight

on a clear evening, appellants' decedent, Mrs. Boyd, a white female fifty-six years of age, wife of Louis Boyd and mother of an infant daughter, Hazel Boyd, was violently struck by a Buick sedan, which was being operated by the appellee; and she died some forty-five minutes thereafter from the injuries she received in the collision.

The accident took place on Main Street in the village of Greensboro, Caroline County. Main Street in this area is twenty-one feet wide with two and one-half feet dirt shoulders on each side, and it runs in a generally north-south direction (at the point of impact, it actually runs in a northwest to southeast direction—for the purposes of this opinion it will be referred to as though it ran from north to south). To the north, it makes a gradual bend to the east into Church Street, with visibility on Main Street for a distance of approximately 350 feet from the scene of the collision. Formerly, it had been a principal artery for traffic running through the village, but at the time of the accident a by-pass accommodated most of the through traffic. There were no cross-walks, traffic lights or sidewalks. The neighborhood was residential, and the posted speed limit was 25 miles per hour.

Appellants and their decedent resided on the east side of Main Street, at a point some 360 feet distant southerly from the intersection of Main and Church Streets. On the day of Mrs. Boyd's death, it had rained. By 8:15 p.m. the weather had cleared, but the street was wet and puddles of water were standing in it. Shortly before 8:15 p.m. an automobile operated by Mrs. Mary Carroll, a life-long friend of Mrs. Boyd, came south on Main Street and stopped on the westerly side of the street, approximately opposite the Boyd home. Mrs. Carroll parked as far off the paved road as she reasonably could, which means that her car was about two or two and one-half feet on the shoulder. The easterly portion (perhaps two and one-half to three feet) of her car was on the paved roadway. From this point there was clear and unobstructed visibility north for about 350 to 360 feet to the bend in the street and south from the bend to beyond the Carroll car.

Having stopped her car, Mrs. Carroll remained in the driver's seat and called across the street to Mrs. Boyd. Mrs.

Boyd left her house on the east side of Main Street and crossed over to the Carroll car, where she stood close to the driver's (east) side of the car, and started to talk to Mrs. Carroll. *At the time when Mrs. Boyd crossed the street, appellee's car was not in sight and there were no motor vehicles in the area, other than Mrs. Carroll's parked car.*

They had hardly begun their conversation, when the Buick automobile operated by the appellee came around the bend in the street from the north. The appellee was barefoot and clad only in shirt and shorts. He had been drinking rum and was highly intoxicated. He had no driver's license. He proceeded south on Main Street at a speed variously estimated at from forty-five to sixty-five miles per hour. There is no evidence that he sounded his horn, or that he made any effort to stop or to slow down. At a point estimated as between 15 feet and 150 feet north of the Carroll car, his automobile *struck a puddle of water and its front end skidded or swerved* to the left (east). His vehicle struck and fatally injured Mrs. Boyd, swerved back into a straight course on the road, and left the scene of the accident.

There is some question as to just what part of appellee's car hit Mrs. Boyd. It may have been the left front, center front or right front. The impact was so violent that it threw her up over the hood and then onto the easterly dirt shoulder, some seventy-five feet from where she had been struck. The hood ornament of the car was broken, the hood was dented, and portions of Mrs. Boyd's glasses were found around the windshield of the car on the driver's side.

There is also some question as to the precise point of impact with reference to the center of the road; there being testimony by one witness that the last time he saw her before the collision she was running south along Mrs. Carroll's car, which would indicate that Mrs. Boyd may possibly have been on the right-hand (west) side of the center of the road when struck and other testimony that she was only about one step from the left-hand (east) shoulder, and running when struck down. Appellee did not testify and thus shed no light on these problems, or on the question of why he was unable to avoid striking a pedestrian who had been, or should have

been, clearly visible to him for 350 to 360 feet before he hit her.

Do the above facts show that Mrs. Boyd was guilty of contributory negligence as a matter of law? This Court, while acknowledging the provision of Code (1957), Article 66½, Section 236 (a), that between street crossings in towns and cities vehicles shall have the right of way over pedestrians, has consistently held that the fact that a pedestrian is crossing a street between street crossings is a fact to be considered on the question of his or her negligence, but such fact, standing alone, is insufficient to establish that the pedestrian is *prima facie* guilty of negligence. *Nelson v. Seiler,* 154 Md. 63; *Webb-Pepploe v. Cooper,* 159 Md. 426, 430; *Lusk v. Lambert,* 163 Md. 335, 337; *Ebert Ice Cream Co. v. Eaton,* 171 Md. 30, 35; *Weissman v. Hokamp,* 171 Md. 197, 202; *Geschwendt v. Yoe,* 174 Md. 374, 379; *Thursby v. O'Rourke,* 180 Md. 223, 228; *Love v. State,* 217 Md. 290, 297. For an analysis of many of the Maryland cases upon this subject, see Due and Bishop, *Motorists and Pedestrians,* 11 Md. L. Rev. 1. No absolute and comprehensive rule as to what does, and what does not, constitute contributory negligence can be formulated which would be applicable to all cases. It is, like primary negligence, relative in nature and not absolute, and being relative, it (again like primary negligence) necessarily depends upon the particular circumstances of each case. *Yockel v. Gerstadt,* 154 Md. 188, 189; *Thursby v. O'Rourke, supra,* 180 Md. at p. 229; *Ford v. Bradford,* 213 Md. 534, 544.

This Court has also repeatedly stated that contributory negligence as a matter of law cannot be found, unless the evidence permits of but one interpretation which shows some distinct, prominent and decisive act in regard to which there is no room for ordinary and reasonable minds to differ. *Thomas v. Baltimore Transit Co.,* 211 Md. 262, 267, and cases cited.

It will be immediately noted that we are not dealing with the usual "pedestrian crossing between intersections" case. Here, a lady was standing in the highway, close beside a parked car talking to a friend. The highway was a lightly travelled street of a small country village; and the speed limit

thereon was 25 miles per hour. Suddenly from around a bend came an automobile bearing down upon her. It was being driven at an excessive rate of speed by an intoxicated driver. That an emergency confronted her, there is little doubt. Had she remained stationary, she may have been unhurt; but the evidence clearly supports the inference that she decided to run for the east side of the road toward her house. One witness said that if she had made another step she would have been off the hard-surface part of the road. At this point, she was probably in a place of safety if the appellee had had his car under proper control, but he struck a puddle of water at high speed and skidded or swerved to his left, and in the end he had fatally injured the appellants' decedent. If Mrs. Boyd were struck when one step from the east edge of the road, and the jury had ample evidence to so have concluded, it would mean that the appellee was well to the left of his center of the road at the time of the collision. The above does not describe a situation where the pedestrian was disputing a motorist's right of way; Mrs. Boyd was unquestionably using every means at her command to accord the motorist the right of way, irrespective of whether she or the defendant had it at the point of collision.

We have pointed out above that the statute creates no presumption of negligence on the part of a pedestrian crossing between intersections, although it does place upon the pedestrian the duty of exercising a great amount of care for his own safety. And we are unable to conclude that persons of ordinary and reasonable minds would all agree that Mrs. Boyd's standing in the highway talking to her friend, under the circumstances described above, or her attempt to reach safety, constituted negligence upon her part.

The case of *Greenbaum v. Costa,* 137 Md. 524, involved a collision between a thirteen-year old child and an automobile. The child was standing on the west side of the street, with one foot in the gutter, adjusting her skates. The automobile was coming north, and, as it approached the child, the driver, in order to avoid a group of children on the east (the driver's right) side of the street, drove to his left and struck the child. This Court stated at 137 Md. 528:

"With regard to the defendant the condition is this: Coming north on Payson Street he was entitled to the right of way east of the center of the street. As he approached the place where this accident occurred, the large number gathered there, if nothing else, made it prudent for him to veer his machine to the left-hand or west side of the street. When upon this side of the street, no matter what his motive may have been, * * * it was incumbent upon him to exercise an even greater degree of care than would otherwise have been the case, and this was still further increased by the naturally slippery condition of the street following a rain."

The trial court stated that the child's standing in the road constituted contributory negligence as a matter of law. This Court held that it was clearly error in the above situation not to have submitted both the question of primary and contributory negligence to the jury.

Again in *Ebert Ice Cream Co. v. Eaton, supra,* 171 Md. 30, the questions of primary negligence on the part of a motorist and the contributory negligence of a pedestrian were involved. The pedestrian was crossing a street from the east between crossings, and, seeing two motor vehicles as they approached from the south one following the other, passed in front of the first vehicle, and was struck by the second after he had crossed the center line of the street to the side on the vehicle's left. The Court referred to what is now Section 217 of Article 66½ [all vehicles shall keep to the right of the center of the road, with exceptions], and to what is now Section 236 (a) of said Article, mentioned above [between street crossings vehicles shall have the right of way], and said at page 35: "The mere fact, however, that a pedestrian crosses a street between intersections [citations], or that a motorist crosses the center line of a street [citation], is not necessarily negligent; it is what either does or both do under such circumstances that determines the question of negligence. * * * [p. 38] The one, in this case, whose duty it was to see that the way on the left was clear before he appropriated the left side of the road was

Stone, the driver of the Ebert truck, and before he attempted to pass the Ogle car [citation], and his chief act of negligence was in proceeding as he did, with his car out of control." The Court then held that the questions of primary and contributory negligence were properly submitted to the jury. See also *R. & L. Transfer Co. v. State,* 160 Md. 222; *Lusk v. Lambert,* 163 Md. 335, 341, 342; *Thursby v. O'Rourke,* 180 Md. 223, 229.[1] Cf. *Bielski v. Rising,* 163 Md. 492.

In *Sun Cab Company, Inc. v. Cusick,* 209 Md. 354, 360, a case dealing with primary negligence it was said: "It is an established principle that a driver who fails to comply with Section 182 [now 217] of the Motor Vehicle Law, which generally requires drivers of motor vehicles to keep to the right of the center of the roadway, is *prima facie* guilty of negligence where the violation directly and proximately causes a collision resulting in injury, and the burden is then cast upon the driver to overcome the presumption of negligence by showing that he was justified in driving in the center or upon the left half of the road."

Applying the above principles of law to the facts and circumstances of the case at bar, and without repeating them, we think the trial judge was correct when he submitted the question of contributory negligence to the jury. The nature and attributes of the actions of Mrs. Boyd, relied upon to show negligence on her part contributing to her injuries, could only be determined correctly by considering all of the attending and surrounding circumstances relating to the collision. When this occurs, it falls within the province of the jury to pass upon and characterize her conduct and it was error for the court to determine its quality as a matter of law. *Victor Lynn Lines, Inc. v. State,* 199 Md. 468; *Meldrum v. Kellam Distr. Co.,* 211 Md. 504, 511.

---

1. In Henderson v. Brown, 214 Md. 463, we made it clear that a pedestrian crossing between intersections must use great care for his own protection. There the motorist was not passing another vehicle, and there was "nothing to show that the cab was on the wrong side of the street (except when it swerved immediately before the impact) or that Henderson [the plaintiff] was on the far half when he was struck."

The appellee seasonably objected to a portion of the trial court's charge. As we have determined that Mrs. Boyd was not guilty of contributory negligence as a matter of law, we must pass upon this objection; because, if the trial court committed error in its charge prejudicial to the appellee, we would be required to reverse the judgments and remand the cases for new trials, rather than to reinstate the judgments.

The appellee wanted and requested the court, in effect, to instruct the jury that the provision of said Section 236 (a) which states that, "[b]etween street crossings in such towns and cities, vehicles shall have the right of way" placed an absolute obligation upon Mrs. Boyd to yield the right of way to him under any and all circumstances. The authorities that we have named above answer the argument. We have never held that the rights of way created by Section 236 (a) were absolute in nature. For instance in *Thursby v. O'Rourke, supra,* 180 Md. 230, we find the following:

> "The universally accepted rule, as before stated, is that at street crossings the pedestrian has the right of way over motorists, and between street crossings motorists have the right of way over pedestrians. But in each instance both, regardless of who has the right of way, have imposed upon them the duty to use reasonable care and diligence to avoid injuring anyone who, although carelessly, may be in the others' right of way. At street crossings a greater degree of care is required of motorists, and between crossings a greater degree of care is required of pedestrians. For that reason, in any particular case, it generally becomes a question for the jury, under proper instructions, to determine, from all of the evidence, which of the contending parties was guilty of the act of negligence directly causing the injury. The mere fact that a person places himself in a dangerous place does not relieve another of the duty to use proper care to avoid injuring him." ("greater degree of care" was evidently used in the sense of "greater amount of care.")

See also *Webb-Pepploe v. Cooper, supra,* 159 Md. at p. 431. Blashfield, 2 A. *Cyc. Automobile Law and Practice* (Perm. Ed.), Section 1291. Cf. *Belle Isle Cab Co. v. Pruitt,* 187 Md. 174, 179. We have carefully examined the trial court's charge as a whole, and it presented the appellee's case to the jury in as favorable a light as he was entitled to have it presented, perhaps even more so.

> *Judgments n.o.v. reversed, judgment entered in No. 1736 in favor of the plaintiff for $1,956.98, and in No. 1737 judgment entered in favor of Louis Boyd for $5,500 and in favor of Hazel Boyd for $16,500, the appellee to pay the costs.*

HAMMOND, J., filed the following dissenting opinion.

The outrageous conduct of the speeding drunken driver who snuffed out the life of a wife and mother on a summer night in a peaceful little Maryland town before the horrified eyes of her husband, seemingly made it impossible for the jury to find that the victim had contributed to her fate by her own carelessness. The feelings of the jury would seem to be reflected in the words of the foreman, when the jury came in and the court clerk asked how they had found. The foreman replied: "We find the defendant, Mr. Simpler, guilty."

On the motion for judgments notwithstanding the verdict, Judge Carter found that "The undisputed evidence in the case" shows that Mrs. Boyd either "did not remain constantly alert to approaching traffic or, if she saw a car approaching 350 feet away, she did not guard against being struck by it" and, therefore, "was contributorily negligent as a matter of law."

I have not been persuaded by counsel or my colleagues that the trial judge did not correctly perform his judicial duty by granting the motion. Contributory negligence has been long established in the law. That aspect of it which may be characterized as the assumption of risk was part of the Roman law. The opinion in the early leading English case on contributory negligence, *Butterfield v. Forrester* (K. B. 1809),

11 East 60, 103 Eng. Rep. 926, regarded as a settled rule that a plaintiff who by his own conduct, in conjunction with that of the defendant, has brought harm upon himself cannot recover. The routine acceptance by the legal profession of these statements as conclusive negatives the thought that the idea was new.

Contributory negligence has remained theoretically strong and unimpeached as part of the law of Maryland. From time to time it has been urged that it be replaced by the rule of comparative negligence or by the rule of payment of restricted compensation to one injured without regard to liability, and it has sometimes been suggested that the verdicts of juries, and even the decisions of courts, have reflected the influence of these concepts. It would be surprising if they had not in very hard cases.

In the hard case before us the negligence of the defendant was gross and inexcusable. Nevertheless, the conduct of Mrs. Boyd to me also was grossly careless and defeated recovery under the controlling rule of contributory negligence. She stationed herself almost in the middle of the main street of the town with her back to traffic, looking neither to right nor left, and carried on a conversation with the occupant of a standing car. The street was twenty-one feet wide and had no shoulders as such. On each side traffic had worn a path in the vegetation, said by the State trooper and the driver of the car to whom Mrs. Boyd was talking to extend two feet from the street. The testimony does not with certainty disclose how far to the right the parked car was standing, but at least four feet and probably more of it remained on the paved surface. Mrs. Boyd was a foot or a foot and a half from the car towards the center of the street. Without question she was blocking the half of the street in which she stood. To pass her, a car travelling in the direction the parked car faced would have to go over into the other half of the street. Her presence in the street, unheedful of traffic, was an invitation to the disaster that occurred. If, as she should have expected, cars approached from opposite directions or one came from her right as did the defendant, she would have been faced with the urgent necessity of either going back whence she had come

across traffic or of going behind or around the parked car. Any such sudden maneuver, in the face of an emergency which she herself had created, would have been dangerous. In this day and age traffic can be expected at any time on any paved street, and fast and careless drivers are not more rare in small towns than elsewhere.

The doctrine of contributory negligence throws on the individual the primary burden of protecting his own interest and safety. The law regards it as unfair that any man should be required to take better care for others than such persons are bound to take of themselves. To hold that, where the only wrong alleged is the defendant's failure to take care for the plaintiff's safety, the plaintiff's own failure to protect himself debars him from recovery, is but a logical extension of the conception underlying consent and voluntary assumption of risk—that the plaintiff can ask from others no higher respect for his rights than he himself pays to them. "Contributory negligence defeats recovery because it is a proximate cause of the accident which happens, but assumption of the risk defeats recovery because it is a previous abandonment of the right to complain if any accident occurs." *Warner v. Markoe,* 171 Md. 351, 360. What Mrs. Boyd did, and did not, do seems to me, as it well may have to the trial judge, to be the equivalent of assuming the risk.

Certainly, her acts and omissions must have been contributory negligence as a matter of law under *Campbell v. Jenifer,* 222 Md. 106, and *Henderson v. Brown,* 214 Md. 463 (in both of which the pedestrian-plaintiffs rather than the driver-defendants appeared to be intoxicated), and under *Martin v. Sweeney,* 207 Md. 543.

I think the judgments notwithstanding the verdicts should have been affirmed.